KENNEDY *v.* STATE.

4777                                                         270 S. W. 2d 912

Opinion delivered June 28, 1954.

[Rehearing denied October 4, 1954.]

*Cole & Epperson,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

ED F. McFADDIN, Justice. Appellant was convicted of the offense of maiming,[1] and sentenced to two years in the penitentiary. For reversal, he prosecutes this appeal.

---

[1] At common law the word was spelled "mayhem", but the more recent spelling of the word is "maim". See 57 C.J.S. 461.

The indictment accused ''the defendant, George Kennedy, of the crime of Maiming, committed as follows, to-wit: The said defendant on the 25th day of October, 1953, in Hot Spring County, Arkansas, did unlawfully, wilfully and of his malice aforethought, put out an eye of one Idella Kennedy, against the peace and dignity of the State of Arkansas.''

The evidence established: that the appellant was the husband of Idella Kennedy; that after some marital arguments, the appellant went out of the house, got his shotgun, fired through the window and injured his wife; that she was seated on a couch and reading a book; that the shot fired by appellant hit her in the breast, arm, head and eye; and that as a result of such injuries, it was necessary to remove her right eye. Appellant admitted the shooting, but claimed that he had no intention of hitting his wife, or of putting out her eye: he claimed that he was only trying to frighten her. But the evidence is amply sufficient to support a finding that he deliberately aimed the gun at her and fired through the window for the purpose of injuring her.

The appellant urges a number of assignments for reversal:

I. *Necessity of Specific Intent to Put Out the Eye.* The Trial Court refused to give appellant's Instruction No. 11-a, which reads:

''You are instructed that if you should find from the evidence that the defendant unlawfully, wilfully and of his malice aforethought shot the prosecuting witness without any intention of putting out one of her eyes, then you are told to find the defendant not guilty of the charge of maiming.''

In lieu of the foregoing Instruction, the Court gave its Instruction No. 5, reading in part as follows:

''In this case it is not necessary that the State prove that the defendant specifically intended to shoot out the eye of the prosecuting witness at the time he fired the shot. It is sufficient if you believe beyond a reasonable

doubt from the evidence that he intended to shoot at the prosecuting witness and to inflict upon her great bodily injury and that same was done wilfully and with malice aforethought, and that as a result of said shot the prosecuting witness' eye was shot out. . . .''

This is not a prosecution under the old common law against mayhem; but is a prosecution for violation of the Statutory offense of maiming. Our Statutes on maiming have existed since Statehood;[2] and may be found in § 41-2501, *et seq.*, Ark. Stats.

Sec. 41-2504, Ark. Stats., reads:

''If any person shall, from malice aforethought, shoot, stab, cut, or in any manner wound and disable any person, he shall be deemed guilty of maiming.''

Sec. 41-2502, Ark. Stats., reads:

''If any person shall, wilfully and of his malice aforethought, . . . put out an eye . . . of any person, he shall be adjudged guilty of maiming.''

The State was not required to prove, in this case, that the sole intention of the defendant was to ''put out an eye.'' The Court's Instruction No. 5, as previously copied, correctly states the applicable law. In *Pate* v. *State,* 206 Ark. 693, 177 S. W. 2d 933, in affirming a conviction for maiming, we said:

''It is urged by appellant that the lower court should have granted his motion for a peremptory instruction for a verdict of not guilty, because the evidence failed to disclose any intent to commit the crime charged. The testimony on behalf of the State tended to establish that appellant, without justification, struck Bryant in the neighborhood of his left eye with a blackjack, and that by reason of this blow his eye was severely injured and had to be removed. 'Malice in law may be inferred from the absence of any just cause or excuse for the doing of an act which has caused injury to another.' 34 Am. Jur. 685.

---

[2] See Chapter XLIV, Art. III, Secs. 1 to 8 (inc.) of the Revised Statutes of Arkansas, adopted in 1837, commonly known as the "Revised Statutes of 1838."

Men are presumed to intend the reasonable and natural consequences of their acts. *Howard* v. *State,* 34 Ark. 433; *Hankins* v. *State,* 103 Ark. 28, 145 S. W. 524; *Rhine* v. *State,* 184 Ark. 220, 42 S. W. 2d 8. The jury had a right to assume from the proof as to the weapon used, the location of the injury and the lack of provocation or justification for the act that the maiming of Bryant was done maliciously and intentionally."

Our holding in the case of *Pate* v. *State, supra,* disposes of the contentions of the appellant in the case at bar regarding Instructions, and also regarding the sufficiency of the evidence to sustain the conviction.

II. *Rulings as to Evidence.* The appellant complains of several rulings of the Court, but we find no error committed.

(a) When one of the Deputy Sheriffs was called as a witness for the State, the Prosecuting Attorney was allowed to ask him if he (witness) did not remember that the Prosecuting Attorney had talked to appellant right after the shooting "in that little office in the City Hall." Whether the conversation took place at the Court House or the City Hall was quite immaterial; so no prejudice resulted from the manner in which the Prosecuting Attorney interrogated the Deputy Sheriff as to where the conversation took place.

(b) When Minnie Ruth Kennedy (daughter of the appellant) was testifying for the State, the Prosecuting Attorney asked her if the appellant had not made indecent proposals to her. The Trial Judge promptly announced:

"I will very strenuously advise the jury to disregard it and admonish the Prosecuting Attorney not to continue with that line of questioning."

In view of the Court's ruling, and the fact that the witness never made any answer to the question, we hold that there was no reversible error committed in regard to this question.

(c)   When the appellant was on the witness stand, the Prosecuting Attorney asked him if he had been fined for whipping his wife, and the appellant answered in the negative.   Then the Prosecuting Attorney asked the appellant how many times he had been to the City Hall; and there was an objection to the question.   The Court ruled:

"The objection is sustained.   The motion for mistrial is denied; but the jury is admonished very earnestly to disregard the prosecuting attorney's question."

The ruling of the Court was correct; and a careful reading of the record convinces us that the admonition was sufficient, and the Court did not abuse its discretion in refusing to declare a mistrial.   See *Glover* v. *State,* 211 Ark. 1002, 204 S. W. 2d 373.

### Conclusion

We have examined all the other assignments, and find no error.

Affirmed.